UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  9/10/2020
```

THE CITY OF NEW YORK

                                 Plaintiff,

-against-

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

                                 Defendant.

1:19-CV-01951 (ALC)(RWL)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

INTRODUCTION

The City of New York ("the City") brought this action seeking a declaration that Philadelphia Indemnity Insurance Company ("Philadelphia") has a duty to defend the City in an underlying matter for the wrongful death of Thaiya Princetta Spruill-Smith ("the Spruill-Smith child"), pending in the Supreme Court of the State of New York, New York County (the "*Spruill-Smith* Action"). The Parties, in agreement that there are no material disputes of fact, have filed motions for summary judgment.

The City of New York, through the Administration of Children's Services ("ACS"), entered into an agreement with Seaman's Society for the Children and Families ("Seamen's Society") to provide preventive services to reduce incidents of maltreatment of children at risk of foster care placement. As required by the agreement, Seaman's obtained insurance, choosing Philadelphia Indemnity as the insurer for a series of policies.

In July 2014, ACS opened an investigation regarding alleged abuse of the Spruill-Smith child. The child was referred to the Seaman's Society for general preventive services. She was visited by the organization at least once in October 2014. The child died in November 2014. In 2015, a lawsuit was launched against the City of New York, ACS, The New York City Police

1

Department and a detective, asserting several causes of action, claiming that the death was caused by abuse from the child's mother or stepfather.

The policy between Seaman's Society and Philadelphia in place at the time of the child's death listed the City of New York as an additional insured. In September 2018, the City of New York tendered the defense of the lawsuit to Philadelphia. Three weeks later, Philadelphia denied coverage, purporting to cite an exclusion in the applicable policy. However, Philadelphia cited an exclusion from the wrong policy. The exclusion Philadelphia relied on is broader than the exclusion that could have applied. Philadelphia did not correct this error for 7 months.

By waiting so long to correct this error, Philadelphia has waived the exclusion that might apply. As explained further below, the Court therefore **GRANTS** New York City's motion for summary judgment and **DENIES** that of Philadelphia.

## BACKGROUND

The following facts are taken from the Parties' Joint Statement of Undisputed Facts Pursuant to Rule 56.1. ("56.1"), ECF No. 25.

The City and Philadelphia come to this dispute through an intermediary, Seamen's Society. The City of New York, acting through the Administration for Children's Services, entered an agreement with Seamen's Society to provide preventive services related to child welfare for a term of four years, from July 1, 2011 to June 30, 2015. 56.1 ¶ 1. Seamen's Society was to use an integrated neighborhood-based service model to reduce incidents of maltreatment of children at risk of foster care placement. 56.1 ¶ 4.

The agreement with the City required Seamen's Society to carry a commercial general liability policy and professional liability insurance. 56.1 ¶ 5. Seamen's Society purchased a series

of insurance policies from Philadelphia Indemnity Insurance Company ("Philadelphia"). 56.1 ¶ 7. There are two policies relevant to the instant matter.

The first is policy number PHPK1106312, which was in effect from December 1, 2013 through December 1, 2014 (the "2013/2014 Policy"). 56.1 ¶ 8. The 2013/2014 Policy provides, in relevant part: i) commercial general liability coverage against claims for bodily injury; and ii) professional liability coverage. 56.1 ¶ 8. It includes Endorsement CG 20 10 07 04, which lists "The City of New York" and "Its officials and employees" as "additional insured person(s) or organizations(s)". 56.1 ¶ 10. The 2013/2014 Policy also includes Endorsement CG 21 46 07 98, Abuse or Molestation Exclusion, ("2013/2014 Abuse or Molestation Exclusion"), which states:

> ABUSE OR MOLESTATION EXCLUSION
> The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B –Personal and Advertising Injury Liability:
> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
>     1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
>     2. The negligent
>         a. Employment;
>         b. Investigation;
>         c. Supervision;
>         d. Reporting to the proper authorities, or failure to so report; or
>         e. Retention;
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

56.1 ¶ 11 (citing ECF No. 25-2 at Bates No. 117).

The second relevant policy is number PHPK1747004, in effect from December 1, 2017 through December 1, 2018 ("the 2017/2018 Policy"). 56.1 ¶ 13. The City is not an additional insured on the 2017/2018 Policy. That policy contains "Endorsement PI-SAM 006 (01/17), the Abuse or Molestation Exclusion", ("2017/2018 Abuse or Molestation Exclusion"), which provides, in part: "This insurance does not apply to any injury sustained by any person arising out

of or resulting from the alleged, actual or threatened abuse or molestation by anyone." 56.1 ¶ 13. As compared to the 2013/2014 Abuse or Molestation Exclusion, the 2017/2018 Abuse or Molestation Exclusion is broader because it does not include the limitation to abuse or molestation "while in the care, custody or control of any insured".

In July 2014, ACS opened an investigation concerning alleged abuse of Thaiya Princetta Spruill-Smith, who lived primarily with her mother and stepfather. 56.1 ¶ 15. On September 15, 2014, a Child Safety Conference was conducted by ACS concerning the Spruill-Smith child. 56.1 ¶ 15. On October 14, 2014, ACS referred Spruill-Smith to Seamen's Society for general preventive services. 56.1 ¶¶ 19-22. On October 22, 2014, a joint visit by ACS and a Seamen's Society's case planner occurred. 56.1 ¶ 22. On that date, the family also signed up for services, and another home visit was scheduled for the following week on October 28, 2014. 56.1 ¶ 24. The October 28, 2014 visit did not take place because the Spruill-Smith child's stepfather told the caseworker that the mother was pregnant and had been admitted to the hospital because her water broke. 56.1 ¶ 25. Thereafter, on November 13, 2014, the caseworker was leaving for an unannounced visit when she received a call advising that the child was hospitalized. 56.1 ¶ 26. On November 14, 2014, the Spruill-Smith child died. 56.1 ¶ 27.

On or about November 13, 2015, the City was served with a summons and complaint in the *Spruill-Smith* action, which bears the caption *Kings County Public Administrator, Administrator of the Estate of Thaiya Princetta Spruill-Smith, deceased, and Terrell Smith v. City of New York, New York City Administration for Children's Services, "Jane" Washington, Tamara Johnson, "John Does" #1-5, the names being unknown but who are intended to be the Caseworkers who neglected to properly investigate Terrell Smith's complaints of abuse inflicted upon Thaiya by Teoka Spruill-Adams and/or David Adams, New York City Police Department,*

*and Detective James Tillman, Shield No.: 5516*, New York Supreme Court, Kings County, Index No. 11965/2015, (or, the "underlying action"). 56.1 ¶¶ 28-29; ECF No. 25-10.

The complaint alleges that the death of the Spruill-Smith child was caused by abuse by her mother or stepfather. 56.1 ¶ 27. The action names the City, ACS, New York City Police Department, and Detective James Tillman as defendants, but not Seamen's Society. 56.1 ¶ 29. Against ACS and the City, the Complaint alleges causes of action for Negligent Supervision, Negligent Investigation, Negligent Hiring, Training, Supervision, and Retention, and Wrongful Death. *Spruill-Smith* Complaint, ECF No 25-10. The *Spruill-Smith* Action also includes claims against the NYPD, City and Detective Tillman related to the allegedly unlawful arrest and prosecution of Terrell Smith, the child's father, for violating a court-ordered custody agreement by not returning the Spruill-Smith child to her mother at the appointed time. *Spruill-Smith* Complaint, ECF No. 25-10 at 30-37.

By letter dated September 6, 2018, the New York City Law Department tendered the defense of the *Spruill-Smith* Action to Philadelphia, noting the City's receipt of the *Spruill-Smith* Complaint, forwarding a copy of the summons, verified complaint, the Certificate of Insurance, and excerpts of the contract between the City and Seamen's Society, and requesting a defense as an additional insured under the Policy. 56.1 ¶ 35. By letter dated September 27, 2018 (the "Disclaimer"), Philadelphia responded to the demand stating that Philadelphia would not accept the tender of the *Spruill-Smith* Action because "the Abuse or Molestation Exclusion operates to preclude coverage", citing "Endorsement PISAM 006 (01/17), the Abuse or Molestation Exclusion" in the 2017/2018 Policy. 56.1 ¶¶ 37-39.

By letter dated October 10, 2018, the Law Department objected to the September 27, 2018 Disclaimer. 56.1 ¶ 40. By email dated October 17, 2018, a claims specialist for Philadelphia

contacted the Law Department and asked for "any and all evidence you have that our insured, Seamen's Society was performing services for the family pursuant to the contract you are referencing." 56.1 ¶ 41. By email dated October 18, 2018, the Law Department provided Philadelphia with certain ACS documents describing actions taken by ACS with respect to Spruill-Smith and renewed its request for coverage. 56.1 ¶ 42-43. By email dated October 18, 2018, Philadelphia responded to the Law Department's October email stating, "[Seaman's Society has] searched their records and have no info that they provided any services to the family." 56.1 ¶ 45. By email dated November 8, 2018, a Philadelphia claims specialist told the Law Department, "We have reviewed the matter and will stand by our disclaimer dated September 27, 2018." 56.1 ¶ 45.

By Summons and Complaint dated December 17, 2018, the City commenced this declaratory judgment action seeking a declaration that Philadelphia is obligated under the Policy to defend the City in the *Spruill-Smith* action, and that Philadelphia must reimburse the City for already incurred attorneys' fees and expenses related to the City's defense in the *Spruill-Smith* action. 56.1 ¶ 46. Philadelphia answered the Complaint on April 2, 2019. 56.1 ¶ 46.

On January 20, 2020, the Parties filed cross-motions for summary judgment. ECF Nos. 23, 26. The City argues that it is entitled to summary judgment because the 2013/2014 Policy requires Philadelphia to defend the City; Philadelphia waived reliance on the 2013/2014 Abuse or Molestation Exclusion by giving late notice that lacked specificity; and, even if it had not waived that exclusion, Philadelphia cannot establish as a matter of undisputed fact that Spruill-Smith was in the "care, custody, and control" of an insured, as the 2013/2014 Abuse or Molestation Exclusion requires. Philadelphia argues that it is entitled to summary judgment because there is no coverage under the commercial general liability portion of the 2013/2014 policy for Mr. Smith's wrongful arrest and detention claims, the City cannot establish that the remaining allegations were caused,

or were alleged to be caused, in whole or in part, by the acts or omissions of Seamen's Society, and because the 2013/2014 Abuse or Molestation Exclusion and another exclusion, the Professional Liability Exclusion, preclude coverage.

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex *Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247-48 (emphases omitted). Whether a fact is material depends on the substantive law of the claim and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 247-48.

## ANALYSIS

The Court begins its analysis with whether, placing aside any exclusions, Philadelphia would have a duty to defend the *Spruill-Smith* action. For the reasons that follow, the Court concludes that it does.

In New York, an insurer's duty to defend is broader than its duty to indemnify. *See Commercial Union Assurance Co. v. Oak Park Marina*, 198 F.3d 55, 59 (2d Cir. 1999) (citation omitted). The insurer is obligated to defend if the underlying action falls within the scope of risk covered by the policy. *See Chubb Ins. Co. v. Hartford Fire Ins. Co.*, No. 97 Civ. 6935, 1999 WL 760206, at *4 (S.D.N.Y. Sept. 27, 1999) (citing *Tartaglia v. Home Ins. Co.*, 240 A.D.2d 396, 658 N.Y.S.2d 388 (2d Dep't 1997)); *American Home Assurance Co. v. Port Auth. of N.Y. & N.J.*, 66

A.D.2d 269, 412 N.Y.S.2d 605, 609 (1st Dep't 1979) ("If the allegations in the underlying action are, on their face, within the compass of the risk covered by the policy, the insurer is obliged to assume the defense of the action."). Courts must examine both the insuring agreement and the exclusion clauses to determine the scope of protection afforded by the policy. *See e.g., Albert J. Schiff Assoc. v. Flack*, 51 N.Y.2d 692, 697 (1980). An insurer will be called upon to provide a defense whenever the allegations of the complaint "suggest—or the insurer has actual knowledge of facts establishing—a reasonable possibility of coverage". *Cont'l Cas. Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 648 (1993) (citations omitted). "If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Frontier Insulation Contractors v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997) (citations omitted).

The 2013/2014 Policy in force at the time of Spruill-Smith child's death requires that Philadelphia provides commercial general liability coverage against claims for bodily injury. 56.1 ¶ 8. Specifically, it states: "[Philadelphia] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Philadelphia] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [Philadelphia] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." 2013/2014 Policy, Section 1.1a, ECF No. 25-2, at 155.

Here, the *Spruill-Smith* action clearly alleges bodily injury, which was alleged to result in the child's death. 56.1 ¶¶ 27, 30, 31. Defendant suggests that the lack of specific reference to Seamen's Society, or its acts or omissions, removes the claim of bodily harm from the ken of the 2013/2014 Policy. Defendant is mistaken. "[A]n insured's right to a defense should not depend solely on the allegations a third party chooses to put in the complaint." *High Point Design, LLC v.*

*LM Ins. Corp.*, 911 F.3d 89, 95 (2d Cir. 2018) (citing *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61 (1991)). It is undisputed that Seamen's Society was engaged to provide preventive services to the Spruill-Smith child prior to her untimely death and visited the child on October 22, 2018. 56.1 ¶ 22. Because the *Spruill-Smith* Complaint alleges, in part, failures to act to protect the child in the face of evidence of her abuse, there is a reasonable possibility that Seaman's Society could be deemed responsible in part for such failure. The Court therefore concludes that Philadelphia has a duty to defend the underlying claim absent an applicable exclusion.

The Court's analysis next turns to the question of whether Philadelphia waived exclusions to coverage besides the 2017/2018 Abuse or Molestation Exclusion, which it cited in its Disclaimer, by raising them for the first time in its Answer in this matter—7 months after the City notified it about the underlying complaint. If it has waived the grounds for exclusion on which it relies in its motion for summary judgment, namely the 2013/2014 Abuse or Molestation Exclusion and the Professional Liability Exclusions, it follows that the City will be entitled to summary judgment that Philadelphia has a duty to defend. For the reasons that follow, the Court reaches just that conclusion.

An insurer bears "the burden of proving that the exclusion 'is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.'" *See Commercial Union*, 198 F.3d at 60 (citing *State of N.Y. v. Blank,* 27 F.3d 783, 789 (2d Cir. 1994)). "This burden is 'heavy', especially when the insurer is seeking to avoid the duty to defend." *Id.*

"Under New York law, an insurer must notify an insured as 'soon as is reasonably possible' of its intention to disclaim coverage for bodily injury under a policy." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 106–07 (2d Cir. 2004), *certified question accepted*, 2

9

N.Y.3d 787 (2004) and *certified question answered*, 3 N.Y.3d 592 (2004) (citing N.Y. Ins. Law § 3420(d)). An insurer's "notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated". *General Acc. Ins. Group v. Cirucci,* 46 N.Y.2d 862, 864 (1979). "A failure by the insurer to give such notice as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial." *Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 1029 1061 (1979) (citations omitted). Courts measure the reasonableness of the delay "from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." *Matter of Arbitration Between Allcity Ins. Co. & Jimenez*, 78 N.Y.2d 1054, 1055 (1991) (citing *Hartford Ins. Co.,* 46 N.Y.2d at 1029). Further, "[a]n insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay." *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 69 (2003). New York courts have concluded that an unexcused delay of 48 days or longer is unreasonable as a matter of law. *See First Fin.*, 1 N.Y.3d at 70; *see also Hartford Ins. Co.*, 46 N.Y.2d at 1029 (two-month delay of disclaimer unreasonable as a matter of law); *West 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co.*, 736 N.Y.S.2d 34, 35 (1st Dep't 2002) (thirty days); *Colonial Penn Ins. Co. v. Pevzner*, 698 N.Y.S.2d 310, 310 (2d Dep't 1999) (forty-one days).

      Here, the City alerted Philadelphia to its claim on September 6, 2018, which Philadelphia replied to by the September 27, 2018 Disclaimer. The Disclaimer cited and quoted the 2017/2018 Abuse or Molestation Exclusion, rather than any clause in the relevant 2013/2014 Policy. The Disclaimer reserved the right to make further exclusions, stating that Philadelphia "did not waive any of the terms, provisions or exclusions of this policy that may be applicable to this matter". ECF No. 25-13 at 1207708. The record indicates that no further disclaimer was made before the

initiation of this matter. Rather, by November 8, 2018 email, Philadelphia told the City, "We have reviewed the matter and will stand by our disclaimer dated September 27, 2018." 56.1 ¶ 45. Philadelphia eventually raised further bases for disclaiming coverage in its Answer in this matter, on April 2, 2019—nearly 7 months after the City requested coverage. For the first time, it invoked exclusions on which it now seeks summary judgment, the 2013/2014 Abuse or Molestation Exclusion and Professional Liability Exclusion.

Philadelphia offers no explanation for the delay in stating its reliance on these provisions. Instead, Philadelphia argues that the Disclaimer was effective as to the 2013/2014 Abuse or Molestation exclusion because the language from the 2017/2018 Policy, which it erroneously cited in the Disclaimer, is the same as that in the 2013/2014 Policy. It argues that inadvertently citing a later version of the same exclusion does not result in Philadelphia waiving its right to rely upon that provision. It cites three cases in support of this proposition: *Atlantic Casualty Insurance Co. v. Coffey*, 548 Fed.Appx. 661, 664 (2nd Cir. 2013), *Adams v. Perry's Place*, 168 A.D.2d. 932 (4th Dept. 1990), and *Realm National. Inc. Co. v. Hermitage Ins. Co.,* 8 A.D.3d 110 (1st Dept. 2004).

Philadelphia's argument is unavailing because the 2013/2014 Abuse or Molestation Exclusion is not the same as the 2017/2018 Abuse or Molestation Exclusion, which Philadelphia quoted and cited in its Disclaimer. The 2013/2014 Abuse or Molestation Exclusion is narrower, limiting the exclusion by the "care, custody or control" language.

With this in mind, the cases on which Philadelphia would rely are distinguishable from and undermine, rather than support, its position. In the unreported *Atlantic Casualty Insurance Co. v. Coffey* opinion, the Second Circuit concluded that where an insurer cited identical exclusion language but referred to a later version of the contract, the letter gave "sufficient notice of the particular language on which [the insurer] relied in its determination that coverage was excluded,

11

as well as its rationale". 548 Fed.Appx. at 664. In *Adams v. Perry's Place*, the court held a disclaimer was effective where "although it misquoted the language of an exclusion in the policy, [it] identified the applicable policy exclusion and set forth the factual basis for the insurer's position that the claim fell within a policy exclusion with sufficient specificity to satisfy the statutory mandate and purpose". 168 A.D.2d 932, 932 (1990). In *Realm Nat. Ins. Co. v. Hermitage Ins. Co.*, the court held that "[t]he original disclaimer letter, which clearly cited the relied upon exclusion, promptly apprised the claimant with a high degree of specificity of the grounds upon which the disclaimer was predicated" "was not rendered ineffective by defendant's quotation of only part of the relevant exclusion". 8 A.D.3d at 111.

Unlike the cases on which Philadelphia would rely, Philadelphia's Disclaimer indicated and cited a wholly inapplicable provision, the 2017/2018 Abuse or Molestation Exclusion, that is not the same as the applicable provision on which it would rely now. As previously noted, the 2013/2014 Abuse or Molestation Exclusion is narrower; it places in issue the question whether the Spruill-Smith child was in the care, custody of control of the City or Seamen's Society. The Disclaimer, by not directing the City to the 2013/2014 exclusion, did not notify the City that Philadelphia had deemed the child to be in the care, custody and control of an insured—if indeed Philadelphia made that assessment at the time. Unlike those in the cases on which Plaintiff would rely, Philadelphia's failure to give specific notice of the 2013/2014 Abuse or Molestation Exclusion is the kind of error that would lead to "difficulty assessing whether the insurer will be able to disclaim successfully." *Cirucci*, 46 N.Y.2d at 864. Nor is "the insurer's responsibility to furnish notice of the specific ground on which the disclaimer is based [] unduly burdensome, the insurer being highly experienced and sophisticated in such matters." *Id.*

The Court therefore concludes that Philadelphia's unjustified delay of nearly seven months in disclaiming on the basis of the 2013/2014 Abuse or Molestation Exclusion and Professional Liability Exclusion was unreasonable as a matter of law, and waived Philadelphia's ability to rely on these exclusions.

The New York Court of Appeals has held that if "any of the claims against an insured arguably arise from covered events, the insurer is required to defend the entire action". *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264–65 (2011) (citing *Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002)); *see also High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 95 (2d Cir. 2018). It is "immaterial that the complaint against the insured asserts additional claims which fall outside the policy's general coverage". *Fieldston Prop. Owners,* 16 N.Y.3d at 264-65. Having concluded that Philadelphia has a duty to defend based on the wrongful death claim, Philadelphia has a duty to defend the entire action, including the NYPD claims.

## CONCLUSION

For the reasons above, the Court concludes that Philadelphia has a duty to defend the City in the *Spruill-Smith* Action. The Court hereby **GRANTS** the City's motion for summary judgment and **DENIES** that of Philadelphia. The Parties are hereby directed to file a joint status report regarding how they would like to proceed with the remainder of the case by October 1, 2020.

**SO ORDERED.**
Dated: New York, New York
    September 10, 2020

Hon. Andrew L. Carter, Jr.
United States District Judge